Finch, J.
“ The defendant’s counterclaim, as pleaded, goes upon the ground that it was made one of the terms of the contract that he should be permitted and would be able to dump the dredging material in-shore, and that the plaintiffs broke that contract by not securing for him such permission or authority. There_ was no express contract to that effect, and if any such existed it was, by implication from the nature of the transaction. The defendant offered to do the dredging at a named price, adding, the material so dredged to be deposited in-shore, so as not to interfere with the trench to be made for the cribs of the new bulkhead. The plaintiffs accepted the' proposition. They had a contract with the owner to build the new bulkhead, and knew the fact that he needed the material for filling, and was both willing and desirous to have the material so deposited. He never interfered to prevent in-shore dumping. The consent of the owner being assured, no difficulty remained except what might come from the law of the state. Both parties assumed, as was again the fact, *302 that in-shore dumping behind a bulkhead was permissible under that law. There was a bulkhead existing, and it was supposed by the parties-that it would afford opportunity for disposing of the material. .They were experienced in the business, and, so far as appears, had equal knowledge and equal means of knowledge-of the law. But at the first effort the shore inspector stopped the-work and prevented the in-shore dumping at the locality selected. At that point it is possible that the defendant might have been justified in abandoning his Contract because of a mutual mistake as to the understood possibility of dumping in-shore, or on the ground'of an implied contract of the plaintiffs to furnish such opportunity. But he did not do so, and kept on carrying the-material out to sea, which was a more expensive process. What, followed is matter in dispute. The plaintiffs say that defendant preferred to dump the material at sea, because he .could not get. his scows near enough to the shove, and could take away much larger loads with his tug. The defendant says that he waived his right temporarily on the faith of plaintiffs’ promise to build the north crib, in which event in-shore dumping could be resumed, and that plaintiffs neglected and refused to build it promptly and for that reason he abandoned the work. We may assume his ’ version as correct. But before lie abandoned the dredging the whole difficulty vanished and he knew it. Over two hundred, feet of the crib parallel to the shore had been completed. The-change was so great that he was not justified in assuming that inshore .dumping would still be prohibited. ■ On the contrary, he saw one Beard, employed by the same owners at the north, damping dredging material in-shore at the precise point where he had earlier been denied that permission. 'Cronin, one of the plaintiffs, testified that the defendant knew what Beard was doing, and that his agent, Bentley, complained about it and threatened to quit. ■ work unless the process was stopped. Why this" complaint was-made the case does not show. Bentley, when called for the defendant, said: I understood the day before I quit work that Mr. Beard had commenced dumping in-shore. I knew.the fact at the time I went and spoke to Mr. Oronin. It thus appears that before the defendant abandoned his work enough of the cribs had been put in place to permit in-shore dumping without official interference, and the defendant knew it, for it was going on under Ms own observation, He needed not to be told, for he saw. He ' had no right to assume that the inspector would refuse to him what he.permitted to Beard, and he should have begun, as he-could have done, to dump in-shore. His successors, who took aphis work where he left it, did so without difficulty or interference,, and what they did he could have done, and he was aware of the fact. Indeed, the prohibition by the shore inspector did not, rest upon the absence of the north crib. That was never specified by any of the" officials. Their action was founded upon the absence of cribs generally, and the alleged need of the north crib was a bare assumption % the defendant without any foundation in fact. -On the contrary, when enough of the outside-crib to serve as protection was constructed all complaint ceased™ *303 Beard dumped in-shore, and also defendant’s successors, and these facts were obvious to him before he abandoned the work. I am unable to see in the proof any justification for his abandonment of the contract.
The judgment should be affirmed, with costs.
All concur, except Haight, J., not sitting. .
Judgment affirmed.